Robert J. Miorelli and Louise Miorelli, his wife, Leo Corazza, M.D. and Mary Corazza, his wife *v.* The Zoning Hearing Board of Hazleton, Joseph Thomas and Elizabeth Thomas, his wife, and Joseph Sando. Joseph Thomas and Elizabeth Thomas, Appellants.

Joseph Sando *v.* The Zoning Hearing Board of Hazleton et al. Joseph Thomas and Elizabeth Thomas, Appellants.

Argued April 7, 1977, before Judges KRAMER, WILKINSON, JR. and BLATT, sitting as a panel of three.

*Henry A. Giuliani*, with him *Thomas J. Carlyon*, and *Falvello, Ustynoski, Giuliani and Bernstein*, for appellants.

*Martin D. Cohn*, with him *Lawrence B. Cohn*, and *Laputka, Bayless, Ecker and Cohn*, for appellees.

No appearance for intervenors.

OPINION BY JUDGE BLATT, May 26, 1977:
Herein consolidated are appeals from two orders of the Court of Common Pleas of Luzerne County which affirmed in part and reversed in part a decision of the Hazleton Zoning Board of Adjustment (Board).

The Board had granted an occupancy permit for a gas station to be operated as a nonconforming use in an area zoned residential but had denied a permit to sell used cars on a lot adjacent to the station. Cross appeals were filed: the owners of the properties, Joseph and Elizabeth Thomas, and their tenant, Joseph Sando, appealed the denial of the permit for the lot and a group of neighbors[1] appealed the granting of the permit for the gas station. The lower court took testimony from witnesses supplied by all concerned parties and ruled that occupancy permits could not be issued for either property because their nonconforming uses as a gas station and a used car lot had been discontinued and abandoned by the present owners for almost seven years prior to the Sando lease. This appeal by the owners and their tenant followed.

In a zoning case where the court below took additional evidence, review by this Court is limited to a determination of whether or not the lower court abused its discretion or committed an error of law. *Harrisburg Fore Associates v. Lower Paxton Township*, 21 Pa. Commonwealth Ct. 137, 344 A.2d 277 (1975). The appellants argue here that the lower court committed an error of law in denying the permits because the nonconforming uses of the building and the lot had never been abandoned.

The question of abandonment is one of fact which depends upon an examination of all of the various factors present in an individual case, and the burden of proving an abandonment of a nonconforming use is on those who assert the abandonment. *Township of Upper Moreland v. Gaunt*, 16 Pa. Commonwealth Ct. 334, 328 A.2d 556 (1974). The evidence as found by the lower court is that the properties involved here were acquired by the Thomases in 1968. The prior

---

[1] Robert Miorelli and Louise Miorelli, Leo Corazza and Mary Corazza.

owners had used the building as a gas station and garage, selling gasoline and repairing automobiles and buses, and the lot had been used for parking and the sale of used automobiles. These uses predated the adoption of the zoning ordinance of the City of Hazleton in 1962, which defined the area in which these properties are located as a residential R-3 district,[2] limiting the area to residential uses. The gas station and the lot therefore became nonconforming uses in the area. The Thomases remodeled the building in 1968 and, apparently with the knowledge of the Hazleton Zoning authorities,[3] rented the greater portion of the building to Urania Engineering (Urania) which utilized the first floor as an assembly shop and a machine shop and used the lot for parking cars belonging to the owners and employees of the company. The building's gas pumps and other service facilities were used by Thomas Kitchens, a company owned by Joseph Thomas, to furnish gas to and occasionally, to service its trucks. Urania left the property in 1975 and the Thomases then leased the building and lot to Joseph Sando for use as a gas station and used car lot. Based on this record, the lower court denied occupancy permits for both the building and the lot, holding that the original nonconforming uses of the

---

[2] The relevant Hazleton Zoning regulation limits uses in an R-3 residential district to the following:

  a. Single-family detached house,

  b. Single-family semi-detached house,

  c. Two-family detached house,

  d. School, public, private or parochial,

  e. Church,

  f. Park, recreation or athletic fields, but not commercially-operated.

[3] The legality of this change in nonconforming uses is not challenged, the appellees restricted their appeal below to the legality of the resurrection of the uses of the properties as a gas station and used car lot.

properties as a gas station and garage and used car lot had been abandoned during the period of Urania's possession.

The pertinent sections of the Hazleton City Zoning Ordinance concerning the abandonment of nonconforming uses provide:

61.41 When nonconforming use of land ceases, and operations discontinued for a period of 12 calendar months, or more, the subsequent use of such land shall revert to conform to the regulations of this ordinance, and amendments thereto.

61.42 If a nonconforming use of a building or part thereof ceases and discontinues operations for a period of more than twelve (12) calendar months, any subsequent use of such building or part thereof shall conform to the regulations specified in this ordinance.

We have previously recognized that the word "discontinued" as used in a zoning ordinance is the equivalent of the word "abandoned" and that this term includes the concept of intent to abandon which is to be ascertained from overt acts, or failure to act, as well as from oral or written statements. *West Mifflin v. Zoning Hearing Board*, 3 Pa. Commonwealth Ct. 485, 284 A.2d 320 (1971). Likewise, we have held that, where a one-year time limitation on the right to resume a nonconforming use is imposed by a zoning ordinance, the intention to surrender the right may be presumed from the expiration of the designated period, but it is still necessary to show the concurrent overt acts or failure to act which indicate abandonment. *Marchese v. Norristown Borough Zoning Board of Adjustment*, 2 Pa. Commonwealth Ct. 84, 277 A.2d 176 (1971).

The appellants argue here that there was no abandonment of the nonconforming uses of the building and

lot because there was no intent to abandon these uses during the Urania possession. They support this argument by making two contentions. First, citing *Hilltown Township v. Horn,* 13 Pa. Commonwealth Ct. 248, 320 A.2d 153 (1974), *rev'd on other grounds,* 461 Pa. 745, 337 A.2d 858 (1975), they argue that the use of the building's gas station and garage facilities by the owner's trucks and the use of the lot for employee parking during the period of Urania's lease was a limited continuation of the nonconforming uses to retain their nonconforming status and that this activity rebuts any presumption that the appellants intended to abandon these nonconforming uses. We disagree. In *Hilltown Township, supra,* we recognized that a limited *continuation* of a nonconforming use of property primarily to retain its nonconforming status is evidence of an intent not to abandon such use. Such is not the case here. The uses made of the building's service station and garage facilities and of the lot during the period of Urania's possession were not a continuation of the uses which had established the properties nonconforming status in 1962, but, throughout the seven-year period of Urania's possession, the building's gas pumps were used not at all for the retail sale of gasoline while the building's repair facilities were used only sporadically to repair the owner's trucks. Similarly, the lot was used only to provide parking for the tenant's employees and not for the sale of used cars. We agree, therefore, that the appellants discontinued the nonconforming uses of the building as a gas station and garage and the use of the lot as a used car lot during the seven-year period of the Urania possession and that this discontinuance is evidence of an intent to abandon the original nonconforming uses of the properties.

The appellants argue next, relying on *Munhall Borough Council Appeal,* 175 Pa. Superior Ct. 320, 104

A.2d 343 (1954), that the cessation of the original nonconforming uses for the period of Urania's possession was caused by their failure to obtain a suitable tenant despite their efforts to do so and that therefore there was no abandonment within the meaning of the zoning ordinance for the circumstances negate an inference of intent to abandon these nonconforming uses. Again we must disagree. In *Munhall Borough, supra,* the court held that an intent to abandon a nonconforming use could not be inferred from the fact that a property was vacant for over a year while the owners attempted to rent it to continue the nonconforming use. The record shows here that, after the owner had rented the larger portion of the building to Urania, he attempted to obtain a tenant to operate the remaining portion of the building as a gas station merely by placing signs in the building's windows. This attempt was unsuccessful, the prospective tenants evidently finding that the portion of the building offered by the appellants was unsuitable for use as a gas station and garage and uneconomic to be used solely for the sale of gasoline.[4] In this situation, we do not believe that the cessation of the nonconforming uses during the period of Urania's possession was the result of circumstances over which the appellants had no control. On the contrary, the failure to obtain a tenant to continue the original nonconforming uses during this period was due to limitations imposed on the property which were necessitated by the appellants' introduction thereto of a different nonconforming use. We are in agreement, therefore, with the lower court's conclusion that the cessation of the original nonconforming uses of the properties during the period of

---

[4] Joseph Thomas testified that a prospective tenant had discovered that the area offered for rent was too small to meet the necessary area requirements to be certified as a motor vehicle inspection station.

Urania's seven-year possession was the result of the appellants' actions and that this cessation constituted an abandonment of these nonconforming uses.

The order of the lower court is affirmed.

### ORDER

AND Now, this 26th day of May, 1977, the order of the Court of Common Pleas of Luzerne County, dated July 22, 1976 and numbered 10014 of 1975, is hereby affirmed.

### ORDER

AND Now, this 26th day of May, 1977, the order of the Court of Common Pleas of Luzerne County, dated July 22, 1976 and numbered 10073 of 1975, is hereby affirmed.